# EXHIBIT B

A3093\306083941.v1

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 25-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 2 of 11

# AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT

**AMERICAN GENERAL FINANCIAL SERVICES**

| ACCOUNT NUMBER | | |
|---|---|---|
| DATE 09/24/04 | CREDIT LIMIT $ 320000.00 | TYPE OF LOAN (Alpha) |
| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER: | |
| AMERICAN GENERAL FINANCIAL SERVICES, INC.<br>80 NEWPORT AVE<br>RUMFORD, RI 02916-2068 | | |

| BORROWER(S) NAME AND ADDRESS ("I","We") |
|---|
| LARRY J MAJEWSKI<br>SHANNON R MAJEWSKI<br>5050 BAYSHORE RD<br>SARASOTA, FL 34243 |

| PROPERTY THAT SECURES THIS LINE OF CREDIT | | |
|---|---|---|
| [X] Conventional Home and Real Estate | [ ] Manufactured Home and Real Estate | [ ] Other Real Estate |
| PROPERTY ADDRESS<br>75 POPE ST<br>NEWPORT, RI 02840 | PROPERTY ADDRESS | PROPERTY ADDRESS |

1. **Meaning of Some Words**. In this Agreement, the words "Borrower," "I," "me," "my," "we," and "our" mean all persons signing this Agreement as a "Borrower" or "Co-Borrower." The words "Lender," "you," and "your" mean AMERICAN GENERAL FINANCIAL SERVICES, INC. _____ its successors, and assigns.

2. **Home Equity Line of Credit Agreement.** Lender has opened a Line of Credit for me (my "Account"). This American General Home Equity Line of Credit Agreement ("Agreement") states the terms and conditions of my Account. I have read this Agreement carefully and will keep a copy for my records.

3. **Credit Limit.** The maximum amount of credit available to me under this Agreement is called my Credit Limit. My Credit Limit is stated above. The total amount I owe Lender at any time under this Agreement and my Security Instrument (defined in Section 5 below) is called my Total Balance. The total amount available for me to borrow from my Account at any time is called my Available Credit. My Available Credit equals my Credit Limit, less my outstanding Principal Balance. My Principal Balance is the amount I owe Lender for each Draw (defined in Section 7 below) on my Account, as well as any fees and charges that are added to my Principal Balance and any credit insurance premiums.

4. **Promise to Pay.** I promise to pay to the order of Lender my Total Balance. If more than one Borrower signs this Agreement, all of us are bound by this Agreement, and each of us, together and individually, will keep all of the promises we make in this Agreement, including our Promise to Pay. If someone other than a Borrower uses my Account, I promise to pay amounts owed to Lender because of Draws by that person, even if that person did not have my permission and even if I told Lender that the person was using my Account, to the extent permitted by applicable law.

5. **Security Interest.** At the time I sign this Agreement, I also will give Lender a mortgage, deed of trust, and/or other security instrument (the "Security Instrument"). The Security Instrument gives Lender a security interest in the property (the "Security Interest") described at the beginning of this Agreement (the "Property"). Lender's Security Interest will be limited to my Credit Limit plus any unpaid finance charges. The Property will be used as the principal residence of at least one Borrower, unless Lender otherwise agrees. I agree not to allow any other lien to be filed against the Property that will be superior to or adversely affect Lender's Security Interest.
The Security Instrument will not secure other debts I owe Lender, unless it specifically states that it secures those debts. This Agreement and my Account will not be secured by a mortgage, deed of trust, or other security instrument on anyone's principal residence, unless the mortgage, deed of trust, or other security agreement specifically states that it secures this Agreement.

6. **Using My Account.**

   **Right to Cancel.** If the Property is the principal residence of any Borrower, I may be entitled to cancel all or a part of this Agreement under the Truth in Lending Act and Regulation Z or other applicable law. If Lender gives me a Right to Cancel, I may not use my Account until the Right to Cancel expires. I may also be entitled to rescind a Security Interest added or increased in the event that the Credit Limit on my Account is increased.

   **The Term of This Agreement.** The term of this Agreement is divided into two periods: the 10 year "Draw Period" and the "Repayment Period." The Repayment Period will vary depending on the payment option I choose.

   **Draw Period.** An advance of funds from my Account is called a Draw. This Agreement and the Draw Period begin on 09/24/04. The Draw Period will continue for 10 years and will end on 09/23/14 (the "Last Draw Date").

   **Repayment Period.** After the Draw Period ends, the Repayment Period begins ("Repayment Period"). During the Repayment Period, I may not take any Draws, and I must repay the Total Balance in accordance with the payment option I choose.

   **Credit Limit.** I may make Draws on my Account up to my Credit Limit; however, I may not take a Draw greater than my Available Credit. If I do request a Draw greater than my Available Credit in violation of this Agreement, Lender may but is not obligated to honor that Draw request, and Lender is not obligated to honor future Draw requests in excess of my Credit Limit.

7. **Draws.** There are two kinds of Draws: the "First Draw" and "Subsequent Draws."
   **First Draw.** I must take a First Draw in the minimum amount of $ 1000.00 on 09/24/04 (the "First Draw Date"). My First Draw will be paid to me by check. In addition to my First Draw, any Fees due under this Agreement that I choose to finance will be added to my Principal Balance.

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Page 1                                    Borrower's Initials _LJM_ _SRM_

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 25-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 3 of 11

## AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

- **Subsequent Draws.** I may take Subsequent Draws during the Draw Period by writing special checks from time to time (each, a "Check"), but I may not request a Subsequent Draw for an amount greater than my Available Credit. Each Subsequent Draw must be for at least $___100.00___. Immediately after any Subsequent Draw, my Principal Balance must exceed $_N/A_____. I may obtain Subsequent Draws at Lender's offices or by using my Checks I receive from Lender. Lender may charge amounts to my Account as Subsequent Draws to protect Lender's Security Interest in the Property, as stated in the Security Instrument, at any time.

    **Checks.** I can use my Checks, subject to the terms of this Agreement. When Lender honors a Check, Lender may charge the amount of the Check to my Account, even if it is post-dated, stale, or will cause me to exceed my Credit Limit. Lender is not obligated to pay Checks that will cause me to exceed my Credit Limit, but, if Lender does so, Lender is not obligated to do so again in the future. Checks will not be returned with my Monthly Statements. Lender can pay Checks in any order it chooses even though this may affect whether I exceed my Credit Limit, unless otherwise required by law.

    **Stop Payment Requests.** If I ask, Lender may attempt to stop payment on a Check, but Lender will have no liability to me if Lender does not. An oral request to stop payment is good for only fourteen (14) calendar days unless I confirm it in writing within that period. A written request is good for only six (6) months unless I renew it in writing within that period. I will contact Lender immediately if I wish to stop payment on a Check. Lender then will send me a "Stop Payment Request" form that I must sign and return to Lender. Lender will advise me of other rules that will apply to Stop Payment Requests.

    **Loss of Checks.** I must notify Lender immediately if any of my Checks are lost or stolen or if I learn that any of the Checks have been used without my permission. To report the loss or theft of my Checks, I may write to Lender at the address listed at the beginning of this Agreement or on my Monthly Statement ("Lender's Address") or call Lender at the telephone number listed at the beginning of this Agreement or on my Monthly Statement ("Lender's Telephone Number"). Lender may change Lender's Address or Lender's Telephone Number by telling me in my Monthly Statement. If my Account is closed for any reason, I agree to return all unused Checks to Lender immediately.

    **Restrictions on Draws.** Lender may refuse to honor any Draw request:
    (a) that will cause me to exceed my Credit Limit;
    (b) that I try to use to make any payments on my Account or any other account due to Lender, unless I first get Lender's permission in writing;
    (c) that does not comply with this Agreement;
    (d) if Lender has suspended or terminated my Account; or
    (e) if I am otherwise in default of this Agreement.

    Lender is not responsible if I am dissatisfied with the goods or services I have purchased or leased with Draws from my Account or if anyone does not accept my Check.

**8. How My Finance Charges Are Computed.** Finance charges will be assessed on my Account in the form of Additional Fees described in Section 10 below and by applying the applicable daily periodic rate disclosed in Section 9 below to the average daily balance on my Account and then multiplying the resulting product by the number of days in the billing cycle. The Finance Charge calculated in this manner will never exceed the Finance Charge that would result from applying the daily periodic rate to the daily balance for each day of the billing cycle. Finance charges will be disclosed on my Monthly Statement as the Finance Charge. The daily periodic rate applied to my Account will be determined by dividing the annual percentage rate applicable to my Account (the "Annual Percentage Rate") for the billing cycle by 365 (the "Daily Periodic Rate").

**Calculation of Average Daily Balance.** Lender figures a portion of the Finance Charge on my Account by applying the Daily Periodic Rate to the average daily balance on my Account. To get the average daily balance, Lender takes the beginning Principal Balance (which excludes any accrued and unpaid finance charges resulting from the daily periodic rate) on my Account each day, adds any new Draws, Fees (as defined below), and credit insurance premiums (except as otherwise provided in this Agreement), and subtracts any payments or credits. This gives Lender the "Closing Daily Balance" on my Account. Then, Lender adds all the Closing Daily Balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives Lender the "Average Daily Balance." The Closing Daily Balance will reflect payments, credits, draws, and debits posted to my Account each day but will not include any unpaid finance charges resulting from the daily periodic rate.

**No Grace Period.** There is no grace period during which I can make a payment and avoid a Finance Charge. Finance charges will begin to accrue on the day that Draws, Fees (as defined below), or credit insurance premiums are posted to my Account.

**9. Annual Percentage Rates/Daily Periodic Rates.** The interest rate that Lender uses to calculate a portion of the Finance Charge on my Account is called an Annual Percentage Rate or a Daily Periodic Rate. The Annual Percentage Rate is the Daily Periodic Rate of interest on my Account expressed as an annual rate.

☐ **Fixed Annual Percentage Rate/Daily Periodic Rate.** The **ANNUAL PERCENTAGE RATE** applied to my Account is _N/A___ %. The Daily Periodic Rate applied to my Account is _N/A___ %.

☒ **Variable Annual Percentage Rate/Daily Periodic Rate.** My Annual Percentage Rate and Daily Periodic Rate may change _quarterly_____. The Annual Percentage Rate and the Daily Periodic Rate on my Account are based on an index. The index is the highest Prime Rate in the "Money Rates" listing in The Wall Street Journal on the first business day after the 14th day of the month preceding each _quarterly__ anniversary of my Account. The anniversary of my Account is _three (3) months___ from the Date of Agreement above and the same date of each _quarterly__ time period thereafter (my "Anniversary"). To get my Annual Percentage Rate, Lender adds __3.680_ percentage point(s) (the "Margin") to the index. My initial **ANNUAL PERCENTAGE RATE** is __8.180_%, and my initial Daily Periodic Rate is __.0224_%. If the index becomes unavailable during the term of this Agreement, Lender may use a comparable index after Lender notifies me.

**Rate Changes.** The Annual Percentage Rate can change _quarterly_____, but the rate cannot increase or decrease by more than __1.000_ percentage point(s) at any rate change. Changes in the Annual Percentage Rate and Daily Periodic Rate for my Account will take effect on the first day of the billing cycle beginning on or after the Anniversary of my Account. My Monthly Statement will show the Annual Percentage Rate and Daily Periodic Rate that applied to my Account during the billing cycle. Increases in the Annual Percentage Rate and Daily Periodic Rate for my Account may result in a greater Finance Charge and an increase in the Current Payment I must make on my Account. The **ANNUAL PERCENTAGE RATE** on my Account will never be more than _15.000_%, which is the same as a Daily Periodic Rate of __.0411_%, or be less than __7.000_%, which is the same as a Daily Periodic Rate of __.0192_%.

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Page 2                                                                    Borrower's Initials _____ _____

ase Number: NC-2017-0379
led in Newport County Superior Court
ubmitted: 9/7/2017 12:11:02 PM
nvelope: 1189047
eviewer: Patricia D.

Case 25-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 4 of 11

### AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

☐ **Introductory Discount for Annual Percentage Rate/Daily Periodic Rate.** Initially, during the discount period, the Annual Percentage Rate and Daily Periodic Rate applicable to my Account will not be the Annual Percentage Rate and Daily Periodic Rate shown above. The Introductory **ANNUAL PERCENTAGE RATE** is N/A %, and the Introductory Daily Periodic Rate is N/A %. The Introductory Annual Percentage Rate and Daily Periodic Rate applicable to my Account will be in effect from the First Draw Date through the first NA billing cycles. Thereafter, beginning on the first day of the next billing cycle, the Annual Percentage Rate and Daily Periodic Rates shown above will apply.

**Each Annual Percentage Rate disclosed above includes only interest and not other charges.**

**10. Fees.** I agree to pay certain fees and charges ("Fees") as provided below. I agree that Lender may charge these Fees to my Account and include these Fees in my Principal Balance, except as otherwise provided in this Agreement. Fees will not be refunded if my Account is closed for any reason, unless required by law.

**Loan Fees.** I agree to pay the following Loan Fees in connection with my Account. If I do not pay the Loan Fees in cash when I open my Account, funds may be advanced from my Account to pay these Loan Fees at the time I take my First Draw.

**Loan Fees Paid to Lender.**
$ 50.00    Credit Investigation Fee         $ 100.00    Property Inspection Fee
$ 150.00   Document Preparation Fee

**Loan Fees Paid to Third Parties.**
$ 740.00   Title Insurance Fee
$ 150.00   Title Examination Fee
$ 113.00   Recording/Releasing Fees RE

**Additional Fees.** I also agree to pay the following Additional Fees on my Account. These Fees are an additional kind of FINANCE CHARGE. These Additional Fees will appear on my first Monthly Statement in the "FINANCE CHARGE" box.

**Additional Fees Paid to Lender.**

**Additional Fees Paid to Third Parties.**

**Account Fees.** If checked, Lender may charge the following Fees to my Account:

☐ **Initial Annual Fee.** Lender may charge an Annual Fee on my Account on my first Monthly Statement. The initial Annual Fee is $ N/A .

☐ **Subsequent Annual Fee.** Lender may charge a subsequent Annual Fee on my Account on each annual Anniversary during my Draw Period. The subsequent Annual Fee is $ N/A .

☒ **Late Fee.** I may have to pay a Late Fee as more fully described in Section 34.

☒ **Returned Check Fee.** I may be required to pay a Returned Check Fee as more fully described in Section 35.

☐ **Reconveyance Fee.** I may be required to pay a Reconveyance Fee as more fully described in Section 36.

**11. Payment Options.** Each month I must pay at least the Minimum Payment shown on each of my Monthly Statements by the payment due date. I may make larger payments on my Account at any time and in any amount, but I still must make any Minimum Payment due for the month(s) following that larger payment. The larger my payments, the smaller the total Finance Charge I will have to pay over the term of this Agreement. I may pay the Total Balance on my Account in full at any time; however, I may be required to pay a Prepayment/Termination Fee, as provided in Section 33.

☐ **Percent of New Balance Option.** Under this option and subject to any balloon payment below, my Minimum Payments will be due monthly and will include any Past Due Amounts and any Late Fee and any Returned Check Fees assessed for the billing cycle, plus a Current Payment equal to N/A % of the sum of the Principal Balance, the finance charges, and any credit insurance premiums assessed for the current billing cycle.

☒ **Assumed Term Option.** Under this option and subject to any balloon payment below, my Minimum Payment will be due monthly and will include a Current Payment equal to an amount that would amortize the Principal Balance and the Finance Charge to be earned on my Principal Balance over an assumed term of 30 years (the "Assumed Term") in substantially equal amounts each billing cycle, plus any Past Due Amounts and any credit insurance premiums, any Late Fee, and any Returned Check Fees assessed for the billing cycle. During my Draw Period, if my Principal Balance changes because I take a Draw and/or Fees are charged to my Account or if my Annual Percentage Rate changes (other than an adjustment resulting from the expiration of an Introductory Rate), my Current Payment will be adjusted at the end of the billing cycle in which the change occurs to an amount that would amortize my Principal Balance and the Finance Charge to be earned on my Principal Balance in substantially equal amounts each billing cycle over my Assumed Term; however, the due date of any balloon payment below will remain the same. During the Repayment Period, each time my Annual Percentage Rate is adjusted or an advance is made from my Account pursuant to this Agreement, my Current Payment will also be adjusted to an amount that would amortize my Principal Balance and the Finance Charge to be earned over the remainder of my Assumed Term; however, the due date of any balloon payment below will remain the same.

If the Current Payment determined under either payment option above is less than $ 50.00 , my Current Payment will equal $ 50.00 or the New Balance shown on my Monthly Statement, whichever is less.

☐ **Balloon Payment.** If I only make the required Current Payments on my Account, they will not be sufficient to repay my Total Balance. I will then be required to pay my remaining Total Balance in a single "Balloon Payment" on N/A .

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Page 3                                                        Borrower's Initials _____ _____

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 23-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 5 of 11

## AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

**Allocation of Payments.** Account payments will be applied first to any Late Fee, then to any Returned Check Fee, any credit insurance premiums billed (where applicable), then to finance charges assessed on my Account, and finally to the Principal Balance of my Account, unless otherwise required by law.

**Form of Payments.** I must make my payments by check, money order, or similar instrument payable in U.S. funds and drawn on a financial institution located in the U.S. I may not mail Lender cash or use a Check (see Section 7 above) to pay Lender; however, I may make my payments in cash in person at any of Lender's offices. I agree not to send Lender payments marked "paid in full," "without recourse," or similar language unless those payments are marked for special handling and sent to Lender's office servicing my Account.

**Where to Send My Payments.** I must send my payment to Lender's Address listed on my Monthly Statement. Payments that Lender receives at Lender's Address by 3 PM each business day will be credited to my Account as of the date of receipt. Payments that Lender receives at Lender's Address after this time will be treated as received by Lender on the next business day. Payments received at any other location will be credited no later than five (5) days after Lender receives them to be credited. I will be sure to include my payment coupon with my payment. If I fail to include my payment coupon, my payment may not be credited to my Account for up to five (5) days. Delayed crediting may cause me to incur a Late Fee and/or additional finance charges.

**12. Monthly Statements.** Lender will bill me for payments due on my Account, every month, by sending me a billing statement, called a Monthly Statement. The period of time covered by each Monthly Statement is called a "Billing Cycle." My first Billing Cycle begins on the Date of this Agreement. The last day of each Billing Cycle is called the "Billing Cycle Closing Date." Each Monthly Statement will show the activity on my Account during the Billing Cycle. The day of the month when each payment will be due is shown after the words "Payment must be received on or before" (the "Payment Due Date"). Each Monthly Statement will show the Billing Cycle Closing Date, the Payment Due Date for the Billing Cycle, and certain other required information. Lender will send each Monthly Statement to the Borrower's address listed at the top of page 1 of this Agreement, called "Borrower's Address."

**When Lender Will Send My Monthly Statements.** Lender will send me a Monthly Statement for each Billing Cycle in which (1) Lender charges a Finance Charge, (2) Lender charges a Fee, (3) there is any other activity on my Account, or (4) the law requires that Lender send me a Monthly Statement.

**Billing Errors.** I should review each Monthly Statement carefully and advise Lender in writing of any errors within sixty (60) days of the Billing Cycle Closing Date, as more fully explained on the Billing Rights Statement that accompanies this Agreement.

**13. When Lender May Prohibit Subsequent Draws or Reduce My Credit Limit.** To the extent permitted by applicable law and as provided in the Agreement, Lender may prohibit Subsequent Draws or reduce my Credit Limit if:

  (a) The value of the Property decreases significantly below the appraised value of the Property. The appraised value of the Property is the value shown by Lender's most recent appraisal of the Property (the "Appraised Value"); or
  (b) Lender reasonably believes that I will be unable to make my Minimum Payments on time because of a material adverse change in my financial circumstances; or
  (c) I am in default of a material obligation under this Agreement. A material obligation includes, but is not limited to, my promise (i) to notify Lender immediately should there be an adverse change in my credit or financial condition; (ii) to give Lender updated financial or credit information upon request; (iii) not to permit any lien to be filed against the Property that will be superior to Lender's Security Interest; and (iv) not to exceed my Credit Limit; or
  (d) Government action (i) prevents Lender from charging any Annual Percentage Rate provided under this Agreement or (ii) adversely affects the priority of Lender's Security Interest in the Property to the extent that the value of Lender's Security interest is less than 120% of my Credit Limit; or
  (e) When the maximum Annual Percentage Rate under this Agreement is reached; or
  (f) Lenders regulators consider Subsequent Draws to be an unsafe and unsound lending practice; or
  (g) I ask Lender to reduce or limit my Subsequent Draws; or
  (h) Any event listed in Section 15 below occurs.

**How to Reinstate My Account.** Lender will reinstate my Account during the Draw Period if (1) I ask Lender in writing to reinstate, (2) I pay any credit report fees and any appraisal fee Lender incurs to update Lender's credit information about me, (3) Lender agrees that the reason that caused Lender to prohibit Subsequent Draws or reduce the Credit Limit no longer exists, and (4) there is no other reason for Lender to prohibit Subsequent Draws or reduce my Credit Limit. Lender may require that all Borrowers sign any request to reinstate.

**14. Required Property Insurance.** I am required to maintain hazard insurance on the Property in types and amounts acceptable to Lender ("Required Insurance"). I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy to be obtained and paid for by me. <u>I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender.</u> Lender may for reasonable cause decline any insurance provided by me. Required Insurance is not available for purchase through Lender. Required Insurance must (a) insure the Property against all risks of physical damage, including loss by fire and other hazards for the term of the Agreement, (b) have terms and amounts satisfactory to Lender, (c) name Lender as loss payee or mortgagee, (d) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing, (e) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee or mortgagee, and (f) not include any disclaimer of the insurer's liability for failure to give such notice. I agree to provide Lender with satisfactory proof of my Required Insurance.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement and the Security Instrument are paid in full, my Account is terminated, and Lender releases or discharges the Security Instrument. In case of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf. I agree that Lender may use any insurance proceeds to reduce the amounts that I owe under this Agreement and the Security Instrument. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement and the Security Instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the Security Instrument.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 23-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 6 of 11

### AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

If, at any time, I fail to buy or keep in force my Required Insurance, Lender may (but is not required to) purchase insurance at my expense to protect Lender's interest in the Property. I agree that Lender may, at its sole option, cancel this insurance and that Lender has a security interest in any unearned premiums from such insurance and I hereby assign to Lender any rights I may have to said unearned premiums and I authorize and appoint Lender as my attorney-in-fact to cancel the insurance and apply the unearned premiums to reduce my Account upon cancellation of said insurance. I agree that this insurance may, but need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of insurance purchased by Lender may be much more than the cost of insurance I could have obtained on my own, and I agree that the cost of such insurance may, to the extent permitted by law, be added to my Principal Balance and accrue finance charges. I authorize Lender to purchase the insurance required by this Agreement. I understand that Lender or its affiliate may earn a profit from the purchase of this insurance, to the extent permitted by applicable law.

15. **Default.** To the extent permitted by applicable law, I will be in default of this Agreement if
   (a) I file for, or my creditors place me in, bankruptcy and I fail to meet the repayment terms of this Agreement; or
   (b) I do not make any Minimum Payment by the Payment Due Date or otherwise fail to meet the repayment terms provided for in this Agreement; or
   (c) I commit fraud or materially misrepresent any information with regard to my Account, including, but not limited to, material misrepresentations in my credit application, financial statements that I make to Lender, or any correspondence or discussions that I have with Lender about my Account; or
   (d) Any action or inaction by me adversely affects Lender's Security Interest in the Property, for example, (i) I transfer title to the Property or sell the Property without Lender's prior written permission; (ii) I do not maintain Required Insurance on the Property; (iii) I do not pay, when due, taxes that would become a lien on the Property; (iv) I am the only Borrower and I die; (v) I do not maintain the Property, I abandon the Property or I commit waste or otherwise destructively use the Property; (vi) a lien that is superior to Lender's Security Interest is filed against the Property, or a lien that is subordinate to Lender's lien is filed against the Property and that lien adversely effects the Property or Lender's rights in the Property; (vii) the Property is taken by condemnation or eminent domain; (viii) the Property is foreclosed upon by another lien holder; (ix) another creditor attempts to enforce a judgment against the Property; (x) I use the Property illegally such that the Property could be seized; or (xi) I move out of the Property; or
   (e) One of two Borrowers dies and Lender's Security Interest is adversely affected thereby.

(**For Kansas residents only**, Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

If I default, Lender may, subject to providing required notices and right to cure, (i) prohibit Subsequent Draws and (ii) reduce my Credit Limit and (iii) close my Account and require me to pay Lender the Total Balance right away and (iv) foreclose on my Property. If I default and Lender hires an attorney who is not Lender's employee to collect my Account, I will pay Lender's collection costs, including court costs and foreclosure costs and reasonable attorney's fees, to the extent permitted by applicable law.

All of Lender's rights and remedies shall be cumulative and nonexclusive with respect to each and every Borrower or Co-Borrower obligated under this Agreement.

16. **When Lender May Close My Account.** If I am in default, Lender may close my Account and require me to pay the Total Balance immediately, after providing me any notice of default and opportunity to cure required by applicable law. If I am in default, Lender first may choose to take other action, such as prohibiting Subsequent Draws or reducing my Credit Limit; however, unless Lender reinstates my Account, Lender does not give up Lender's right to close my Account and require me to pay Lender the Total Balance immediately, even if I do not default again. If Lender closes my Account and requires me to pay Lender the Total Balance right away, I must pay the Total Balance I owe Lender immediately. Until I pay Lender in full, the Principal Balance will continue to accrue finance charges at the rate disclosed in this Agreement, or the maximum rate allowed by applicable law, whichever is less.

17. **Closing My Account.** Except as otherwise provided in this Agreement, I may close my Account at any time by calling Lender at Lender's Telephone Number and sending a written request to Lender's Address. Lender will close my Account when Lender receives my notice. If more than one person signs this Agreement as a Borrower, any Borrowers request to close the Account will be treated as a request to close this Account by all Borrowers. Lender may not honor any Check Lender receives after Lender receives my notice. If I close my Account, I must stop using it immediately and pay the Total Balance I owe Lender. Until I pay Lender in full, Lender will charge finance charges on the Principal Balance of my Account.

18. **Credit Information.** I must notify Lender immediately if there is any adverse change in my credit or financial condition. I will provide Lender with updated financial or credit information when Lender requests it. Lender may get consumer reports from consumer reporting agencies when Lender reviews my Account.

19. **Notices.** Lender will send me any notice required by this Agreement or by law to Borrower's Address. I will tell Lender in writing if Borrower's Address changes. If Lender mails me a letter, notice, or statement to Borrower's Address, Lender can assume that I have received it. If I send Lender a notice or letter, I must send it to Lender's Address or any other address Lender specifies in my Monthly Statement.

20. **Tax Deductions.** Lender has made no promises to me nor advised me in any way whether the Finance Charges and Fees are "interest" that I may deduct on my tax returns. I should consult a tax advisor about deducting Finance Charges and Fees on my tax returns.

21. **No Transfer.** I will not transfer or assign any of my rights under this Agreement. Lender may transfer or assign any or all of Lender's rights under this Agreement.

22. **Telephone Calls.** Lender may listen to or record Lender's telephone calls with me for quality control purposes. Lender may use and I consent to the use of automated telephone equipment or prerecorded telephone calls to contact me about my Account, to the extent allowed by law. If I have a telephone answering device, Lender may leave messages about my Account or about additional opportunities and promotions on this device.

23. **No Waiver.** Lender may choose to delay enforcing any of Lender's rights or waive any of Lender's rights under this Agreement. Lender may delay enforcing or waiving any of Lender's rights without affecting Lender's other rights. If Lender waives a right, Lender can still enforce the same right later.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 23-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 7 of 11

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

**24. Lender's Errors.** Lender does not intend to charge or collect any interest, charge, or fee that is more than the law allows. If Lender charges or collects any amount over what the law allows, Lender will apply the excess amount first to the Principal Balance due on my Account as a partial prepayment without any Prepayment/Termination Fee. If I have paid my Account in full, Lender will refund any excess amount. If any part of this Agreement is finally determined to be unenforceable under any law, rule, or regulation, all other parts of this Agreement still are valid and enforceable.

**25. How Lender May Change This Agreement.** Subject to any state law requirements, Lender may change the terms of this Agreement if (a) I have already agreed to the change in this Agreement, (b) if I agree to the change in writing at the time Lender requests it, (c) if the change unequivocally will benefit me during the remaining term of this Agreement, or (d) if the change is insignificant (such as changes relating to Lender's data processing systems).

**26. Entire Agreement.** This Agreement, together with all documents executed at the same time, contain the entire agreement of the parties concerning the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein.

**27. Broker Representations.** Borrower acknowledges that any broker involved in the transaction is not Lender's agent, and Lender is not bound by any of the brokers representations.

**28. Release of Security.** Lender is not obligated to release the Security Instrument on the Property unless there are no longer any amounts owing to Lender under this Agreement and unless I indicate to Lender in writing that I want to terminate my Account.

**29. Not applicable.**

**30. Not applicable**

**31. Miscellaneous.** I waive the defenses of presentment, notice of dishonor, and protest, if any, to the enforcement of this Agreement and any Security Instrument. Time is of the essence of this Agreement. If any provision of this Agreement shall be adjudged or deemed invalid, illegal, or unenforceable, such provision shall be deemed stricken from this Agreement and the remainder of the Agreement shall be construed as if such provision had never been included. Plural words shall be construed in the singular and singular words in the plural as their context may require, or as required to give effect to the terms of the Agreement. I agree to cooperate in executing any extension or statement of maturity of the Security Instrument securing this Agreement.

**32. Arbitration Agreement and Waiver of Jury Trial. (See following pages).**

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

> The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the lender or who is affiliated with the lender by common control, contract, or business arrangement:
>
> **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

ase Number: NC-2017-0379
led in Newport County Superior Court
ubmitted: 9/7/2017 12:11:02 PM
nvelope: 1189047
eviewer: Patricia D.

Case 25-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 8 of 11

### AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)
### ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. In the event that AAA is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the AAA for good cause, then Lender and I agree to submit all disputes to JAMS for proceedings conducted under its Financial Services Arbitration Rules and Procedures. If there is a conflict between the rules of the NAF (or the AAA or JAMS) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B. SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C. STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA or JAMS).

**D. COSTS OF ARBITRATION.** The NAF, AAA, and JAMS all charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E. CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

**SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS**

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 25-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 9 of 11

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con't)

F.  **ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF, AAA, or JAMS, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

G.  **LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

H.  **LIMITATION OF ARBITRATOR'S AUTHORITY**: The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

I.  **LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

J.  **ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

K.  **FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (612-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.
(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.
(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.
(d) This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.
(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.
(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.
(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

**I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 23-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 10 of 11

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

33. **Prepayment/Termination Fee.**

[X] If checked and if (i) I pay the Total Balance on my Account within __12__ months after the Date of Agreement and (ii) I terminate my Account, I agree to pay a prepayment/termination fee equal to __2.0__ % of the amount of my principal balance outstanding ("Prepayment/Termination Fee"). There will be no Prepayment/Termination Fee if: (a) my Account is refinanced or consolidated by Lender or it's affiliate; (b) my Account is prepaid with insurance proceeds; (c) my Account is prepaid as a result of lawsuit, foreclosure, or acceleration; (d) Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the Prepayment/Termination Fee is prohibited by applicable law; or (e) my Account is terminated more than __12__ months after the Date of Agreement.

[ ] If checked, there will be no Prepayment/Termination fee.

34. **Late Fee.** If I fail to pay in full the Current Payment within __15__ days of the Payment Due Date, Lender may charge a Late Fee equal to __5.00__ % of the __unpaid__ amount of the payment, but not more than $__N/A__ or less than $__20.00__.

35. **Returned Check Fee.** If I make a payment on my Account by a check or other instrument that is returned to Lender unpaid for any reason, Lender may charge a Returned Check Fee of $__20.00__.

36. **Reconveyance Fee.** Not applicable.

37. **Due on Sale.** If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument; however, this option shall not be exercised if the exercise of this option by Lender is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender will give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on me.

38. **Governing Law.** The laws of the state where the Property is located and federal law govern this Agreement.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Case Number: NC-2017-0379
Filed in Newport County Superior Court
Submitted: 9/7/2017 12:11:02 PM
Envelope: 1189047
Reviewer: Patricia D.

Case 23-00204-jd    Doc 13-2    Filed 01/27/25    Entered 01/27/25 11:36:04    Desc
Exhibit Exhibit B - Account Agreement    Page 11 of 11

AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

**IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.**

---

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UNARBT (8-12-01)

---

I agree that, as of the date first written above ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, a copy of the Security Instrument, the Privacy Notice, two copies of a Notice of Right to Cancel (if applicable), and agree to be bound thereby.

**CAUTION: IT IS IMPORTANT THAT I THOROUGHLY READ THE CONTRACT BEFORE I SIGN IT.**

x_____
Witness KIRSTIN VANBUSKIRK

x_____
Witness REBECCA WOLSTENCROFT

x _Larry J. Majewski_ L.S.
Borrower LARRY J MAJEWSKI
by Shannon Majewski Attorney-in-fact

x _Shannon Majewski_ L.S.
Co-Borrower SHANNON R MAJEWSKI

x_____ L.S.
Co-Maker

Print Name: _____

x_____ L.S.
Co-Maker

Print Name: _____